IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

JESSE L. ANDREWS, et al.                                                    PLAINTIFFS

v.                                               CIVIL ACTION NO. 2:11-CV-97-KS-MTP

DAIRY FARMERS OF AMERICA, INC., et al.                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court (1) **grants in part and denies in part** the Motion to Dismiss [38] filed by Defendants Dairy Farmers of America, Inc., Dairy Marketing Services, LLC, Southern Marketing Agency, Inc., and Gary Hanman; (2) **grants in part and denies in part** the Motion to Dismiss [44] filed by Defendant Dean Foods Company; and (3) **grants** the Motion to Dismiss [46] filed by Defendant Greg Engles.

## I. BACKGROUND[1]

Plaintiffs are dairy farmers who produce raw milk for use in beverage products for human consumption. Defendant Dairy Farmers of America, Inc. ("DFA") is a dairy cooperative, a voluntary association of dairy farmers who collectively market their dairy products. Defendant Dean Foods Company ("Dean") bottles and processes raw milk. Defendant National Dairy Holdings, L.P. ("NDH") is a partnership comprised of DFA, Dean, and former Dean executives which owns and operates processing and bottling plants. Defendants Southern Marketing Agency, Inc. ("SMA") and Dairy Marketing Services, LLC ("DMS") are dairy marketing agencies controlled by DFA.

---

[1]In addressing Defendants' motions, the Court must accept the factual allegations of Plaintiffs' Amended Complaint as true. Accordingly, the factual background provided below is derived solely from the Plaintiffs' allegations, and it should not be construed as the Court's findings.

Defendants Greg Engles, James Baird, Gary Hanman, and Allen Meyer are executive officers of either DFA or Dean.

Plaintiffs' complaint, in a nutshell, is that Defendants conspired to deprive them of profits from the sale of raw milk. Plaintiffs allege that Dean, DFA, and NDH own or control 77% of the milk processing plants in the Southeastern United States, and that DFA controls more than 50% of the raw milk production in the Southeastern United States. Plaintiffs believe that DFA abandoned its role as a farmers' cooperative by acquiring interests in milk processing plants and conspiring with Dean and various related companies to force local dairy farmers to join DFA and sell their raw milk to bottling plants controlled or owned by Dean or DFA through DFA-controlled marketing agencies.

Plaintiffs brought a variety of claims, including several antitrust claims. They allege that all Defendants have conspired (Count One of the Amended Complaint) and attempted (Count Two) to monopolize or monopsonize the marketing, sales, and purchasing of milk in the southeastern United States in violation of Section 2 of the Sherman Act.[2] Next, they allege that DFA has monopolized the market for the sale and marketing of milk in the southeastern United States in violation of Section 2 of the Sherman Act (Count Three). Plaintiffs also allege that Dean, NDH, and DFA have monopsonized the market for the purchasing of milk in the southeastern United States in violation of Section 2 of the Sherman Act (Count Four). Finally, Plaintiffs allege that all Defendants violated Section 1 of the Sherman Act[3] by unlawfully conspiring to foreclose competition for the purchase of milk from dairy farmers in the southeastern United States (Count Five).

In addition to antitrust claims, Plaintiffs brought claims under the Racketeering and Corrupt

---

[2] 15 U.S.C. § 2.

[3] 15 U.S.C. § 1.

Organizations Act ("RICO").[4] First, Plaintiffs allege that DFA violated 18 U.S.C. § 1962(a) by receiving income through a pattern of racketeering activity and investing that income in an enterprise engaged in interstate commerce (Count Six). Next, Plaintiffs allege that DFA violated 18 U.S.C. § 1962(b) by maintaining control of an enterprise in interstate commerce through a pattern of racketeering activity (Count Seven). Plaintiffs further allege that DFA, Dean, Hanman, Engles, SMA and DMS violated 18 U.S.C. § 1962(c) by conducting or participating in an enterprise in interstate commerce through a pattern of racketeering activity (Count Eight). Finally, Plaintiffs allege that all Defendants violated 18 U.S.C. § 1962(d) by conspiring to commit the above RICO violations (Count Nine).

Finally, Plaintiffs brought a few state law claims. First, they allege that all Defendants committed common law fraud (Count Ten). Second, they allege that DFA breached its contract with them (Count Eleven). Third, Plaintiffs allege that Defendants Dean, Engles, and Hanman tortiously interfered with their contract with DFA.

The Court now addresses three motions to dismiss [38, 44, 46] filed by various Defendants as to certain claims asserted by Plaintiff.

## II. DFA'S MOTION TO DISMISS [38]

Defendants DFA, DMS, SMA, and Gary Hanman filed a Motion to Dismiss [38] Counts Six through Ten, and Count Twelve of the Amended Complaint.

### A.    *Plaintiffs' Standing to Pursue RICO Claims*

First, Defendants argue that Plaintiffs do not have standing to pursue their RICO claims (Counts Six through Nine). Article III of the United States Constitution limits this Court's

---

[4] 15 U.S.C. §§ 1961-1968.

jurisdiction to "Cases" and "Controversies." U.S. CONST. art. III, § 2, cl. 2. "The doctrine of standing is one of several doctrines that reflect this fundamental limitation." *Summers v. Earth Island Inst.*, 555 U.S. 488, 129 S. Ct. 1142, 1149, 173 L. Ed. 2d 1 (2009). The United States Supreme Court has described the following requirements as the "irreducible constitutional minimum" of standing:

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (citations and punctuation omitted).

"When standing is challenged on the basis of the pleadings, [the Court] must accept as true all material allegations of the complaint and . . . construe the complaint in favor of the complaining party." *Ass'n of Am. Physicians & Surgeons v. Tex. Med. Bd.*, 627 F.3d 547, 550 (5th Cir. 2010). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Massachusetts v. EPA*, 549 U.S. 497, 518, 127 S. Ct. 1438, 167 L. Ed. 2d 248 (2007) (punctuation omitted); *see also Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) ("At the pleading stage, allegations of injury are liberally construed."). However, "standing cannot be inferred argumentatively from averments in the pleadings, but rather . . . it is the burden of the party who seeks the exercise of jurisdiction in his favor clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) (internal citations and

punctuation omitted). Application of the above requirements is not a "mechanical exercise." *Pennell v. City of San Jose*, 485 U.S. 1, 7, 108 S. Ct. 849, 99 L. Ed. 2d 1 (1988).

RICO "provides that any person injured in his business or property by reason of a violation of Section 1962 of this chapter" may file a lawsuit in "any appropriate United States district court." *Rogers v. McDorman*, 521 F.3d 381, 387 (5th Cir. 2008); *see also* 22 U.S.C. § 1964(c). "Section 1962, in turn, lays out the criminal prohibitions. Thus, civil RICO liability is dependant upon a defendant's committing criminal RICO acts." *Rogers*, 521 F.3d at 387. Although there are different types of RICO claims, they all have three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (punctuation and citations omitted). "The predicate acts can be either state or federal crimes." *Id.* "[A] RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the RICO violation." *Brown v. Protective Life Ins. Co.*, 353 F.3d 405, 407 (5th Cir. 2003).

Defendants argue that Plaintiffs do not have standing to pursue their RICO claims because they alleged that their purported injuries were proximately caused by antitrust violations, rather than a pattern of racketeering activity. Section 1961 defines "racketeering activity" as certain felonies under state law and any act indictable under a variety of federal statutes. 18 U.S.C. § 1961(1). The Sherman Act is not listed among those federal statutes. 18 U.S.C. § 1961(1)(B)-(G). However, Plaintiffs alleged that Defendants violated a number of other federal statutes which are listed in RICO's definition of racketeering activity, including 18 U.S.C. § 1341, 18 U.S.C. § 1343, 18 U.S.C.

§ 1951, 18 U.S.C. § 2314, 18 U.S.C. § 1952, and 18 U.S.C. § 1956. *Id.*

To have standing, a RICO plaintiff must show that his injury was proximately caused by the predicate activity underlying the RICO violation. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 654, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008); *Brown*, 353 F.3d at 407. "Proximate cause . . . is a flexible concept that does not lend itself to a black-letter rule that will dictate the result in every case." *Bridge*, 553 U.S. at 654, 128 S. Ct. 2131 (punctuation omitted). Generally speaking, though, there must be "some direct relation between the injury asserted and the injurious conduct alleged." *Id.* "A link that is 'too remote,' 'purely contingent,' or 'indirec[t]' is insufficient." *Hemi Group LLC v. New York*, 130 S. Ct. 983, 989, 175 L. Ed. 2d 943 (2010) (Roberts, C.J., plurality opinion) (alteration original).[5] The question, therefore, is whether Plaintiffs were the "direct victim[s]" of Defendants' alleged RICO predicate acts or, conversely, whether "a set of actions . . . entirely distinct from the alleged RICO violation" was the cause of Plaintiffs' injuries. *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006).

Defendants argue that Plaintiffs have not alleged any specific injuries flowing directly from the alleged RICO predicate acts. Rather, Defendants contend that Plaintiffs only alleged injuries

---

[5]Only three other Justices fully concurred with Chief Justice Roberts' opinion. *Id.* at 986. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgment on the narrowest grounds." *Garland v. Roy*, 615 F.3d 391, 399 (5th Cir. 2010) (punctuation omitted). Accordingly, Justice Ginsburg's concurring opinion is the applicable holding of the Court. *Hemi Group LLC*, 130 S. Ct. at 994-995. Justice Ginsburg held that the plaintiff's claims were outside the scope of the federal statute which purportedly provided the predicate acts for the RICO claim. *Id.* at 994. She did not express any disagreement with the plurality's general discussion of RICO's proximate causation principles. *Id.* at 995. Therefore, although the *Hemi Group* plurality opinion was not the Court's holding, there does not appear to be any harm in citing to it for the general causation principles of a RICO action.

flowing from antitrust violations. In the present case, however, there does not appear to be any grounds for this distinction. The predicate acts underlying the RICO claims are the same acts underlying Plaintiffs' antitrust claims. Therefore, this is not a case where "a set of actions . . . entirely distinct from the alleged RICO violation" caused the plaintiff's injuries. *Id.* Indeed, Defendants appear to concede that Plaintiffs adequately plead specific injuries proximately caused by antitrust violations. That being the case, if the actions forming the antitrust violations are also the predicate acts underlying the RICO claims, Plaintiffs must have adequately plead the proximate causation element with respect to the RICO claims.

In the Court's opinion, Defendants' argument is based largely on semantics, rather than a practical reading of Plaintiffs' Amended Complaint. Furthermore, Defendants have not cited to any law which requires that antitrust claims and RICO claims derive from separate sets of underlying actions. Accordingly, the Court rejects Defendants' standing argument.

**B.      *A Pattern of Racketeering Activity***

Next, Defendants contend that Plaintiffs' RICO claims (Counts Six through Nine) should be dismissed pursuant to Rule 12(b)(6). "Motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (punctuation omitted). "To survive a Rule 12(b)(6) motion to dismiss, [a plaintiff's complaint] need only include a short and plain statement of the claim showing that the pleader is entitled to relief." *Hershey v. Energy Transfer Partners., L.P.*, 610 F.3d 239, 245 (5th Cir. 2010) (punctuation omitted). However, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Great Lakes Dredge & Dock Co. LLC v. La. State*, 624 F.3d 201, 210 (5th Cir. 2010) (punctuation omitted).

"To be plausible, the complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Id.* (punctuation omitted). "The complaint need not contain detailed factual allegations, but must state more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *PSKS, Inc. v. Leegin Creative Leather Prods., Inc.*, 615 F.3d 412, 417 (5th Cir. 2010) (punctuation omitted). When determining whether a plaintiff has stated a valid claim for relief, the Court must "accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Great Lakes Dredge & Dock Co. LLC*, 624 F.3d at 210. However, the Court will not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* Legal conclusions may provide "the complaint's framework, [but] they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009). A plaintiff must provide more than "threadbare recitals of a cause of action's elements, supported by mere conclusory statements, which do not permit the court to infer more than the mere possibility of misconduct." *Hershey*, 610 F.3d at 246 (punctuation omitted).

Defendants argue that Counts Six through Nine of the Amended Complaint should be dismissed because Plaintiffs failed to allege a "pattern of racketeering activity." *See St. Germain*, 556 F.3d at 263. "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *Id.* Defendants contend that Plaintiffs failed to allege sufficient facts to establish violations of the federal statutes which purportedly form the predicate acts for the alleged RICO violations. The Court shall examine each RICO claim to determine whether Plaintiffs alleged sufficient facts to show a "pattern of racketeering activity."

    1.      *Count Six: Violation of 18 U.S.C. § 1962(a)*

In Count Six of the Amended Complaint, Plaintiffs alleged that Defendant DFA violated 18

U.S.C. § 1962(a), which provides:

> It shall be unlawful for any person who has received any income derived directly or indirectly, from a pattern of racketeering activity . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). As stated above, Plaintiffs cited a number of federal statutes which DFA

allegedly violated, including the mail fraud statute.

The mail fraud statute provides, in pertinent part:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting to do so, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, . . . or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail . . . any such matter or anything, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1341. There are three elements to a mail fraud charge: "(1) a scheme to defraud; (2) use

of the mails to execute that scheme; and (3) the specific intent to defraud." *United States v. Lucas*,

516 F.3d 316, 339 (5th Cir. 2008) (punctuation omitted). "A misrepresentation must be material to

constitute fraud under the statute, meaning it has a natural tendency to influence, or is capable of

influencing, the decision of the decision-making body to which it was addressed." *Id.* (punctuation

omitted). The statute criminalizes "any plan, consummated by the use of the mails, in which artifice

or deceit is employed to obtain something of value with the intention of depriving the owner of his

property." *United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980). "The scheme is to be

measured by a non-technical standard; the measure of fraud is its departure from moral uprightness,

fundamental honesty, fair play and candid dealings in the general life of members of society." *Id.*

9

Defendants argue that Plaintiffs failed to allege sufficient facts to make out violations of the mail fraud statute insofar as they failed to allege that any Defendant schemed to obtain any of Plaintiff's money or property by means of fraudulent representations or promises. Plaintiffs alleged that DFA has and continues to fraudulently represent that it seeks the highest raw milk prices for its farmers to make its members' businesses more profitable, while actually conspiring to give farmers the lowest prices in order to yield higher profits for its other business enterprises, including its milk bottling and processing interests. Plaintiffs listed eleven different mailings which were purportedly a part of this scheme, including several checks for proceeds from the sale of milk. In each mailing which contained a check, DFA outlined a deduction for "advertising and promotion" fees. In other mailings, DFA explained that the "capital retains" deduction from members' monthly checks would result in a favorable return on the members' investment in the cooperative. Within the context of Plaintiffs' Amended Complaint – which alleges DFA actually conspired to lower the profits of dairy farmers' businesses in order to benefit the bottling and processing side of the industry – such representations are plainly deceitful and/or fraudulent. Furthermore, they are related and part of a continuous scheme to allegedly defraud Plaintiffs.

Therefore, the allegations listed above are sufficient to make out a plausible "pattern of racketeering activity," and it is unnecessary for the Court to address the other alleged predicate acts – at least insofar as they pertain to Count Six of the Amended Complaint. Accordingly, the Court rejects Defendants' argument that Count Six of the Amended Complaint should be dismissed because Plaintiffs failed to allege sufficient facts to show a "pattern of racketeering activity."

2.   *Count Seven: Violation of 18 U.S.C. § 1962(b)*

In Count Seven of the Amended Complaint, Plaintiffs alleged that DFA violated 18 U.S.C.

10

§ 1962(b), which provides: "It shall be unlawful for any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1962(b). As explained above, Plaintiffs alleged sufficient facts to show a "pattern of racketeering activity" with respect to DFA's alleged violations of the mail fraud statute. Accordingly, the Court rejects Defendants' argument that Count Seven of the Amended Complaint should be dismissed because Plaintiffs failed to allege sufficient facts to show a "pattern of racketeering activity."

　　　3.　　*Count Eight: Violation of 18 U.S.C. § 1962(c)*

　　　In Count Eight of the Amended Complaint, Plaintiffs alleged that Defendants DFA, Dean, Hanman, Engles, SMA, and DMS[6] violated 18 U.S.C. § 1962(c), which provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). An "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Plaintiff alleges that Defendants DFA, Dean, Hanman, Engles, SMA, and DMS are all members of a group associated in fact whose purpose is limiting dairy farmers' access to geographically convenient bottling facilities in order to force them to join DFA and use its marketing affiliates.

　　　As noted above, Plaintiffs alleged sufficient facts to show a "pattern of racketeering activity"

---

[6]Although the heading for Count Eight of the Plaintiffs' Amended Complaint only lists Defendants DFA, Dean, Hanman, and Engles, the text of Count Eight also implicates Defendants SMA and DMS.

with respect to DFA's alleged violations of the mail fraud statute. However, the Court has not yet examined the alleged predicate acts perpetrated by any other Defendants. Although Count Eight refers to Defendants Dean and Engles, they were not a party to the Motion to Dismiss [38] which the Court currently addresses. Accordingly, the Court will address the alleged predicate acts of Defendants Hanman, SMA, and DMS.

      a.        **Hanman**

Hanman was the CEO of DFA from 1998 through 2005. He also served on the management committee of Dairy Management, LLC, the sole general partner of Defendant NDH, the partnership through which DFA owns its bottling and processing interests. Plaintiffs failed to allege when Hanman served as a manager at Dairy Management LLC, but they alleged that Hanman exerted substantial control over Defendants' actions throughout the events which gave rise to this matter. Beyond Hanman's service as a manager/executive with DFA and Dairy Management LLC, Plaintiffs also alleged various examples of interstate travel by Hanman for purposes of planning Defendants' schemes. First, Plaintiffs alleged that Hanman hosted a hunting trip for the express purpose of planning Defendants' alleged scheme to defraud. Next, Plaintiffs alleged that Hanman met with Defendant Engles and others on October 30-31, 2002 to discuss their plans to induce more independent dairy farmers to join DFA. Finally, Plaintiffs alleged that Hanman traveled to Knoxville, Tennessee, for the purpose of furthering Defendants' alleged scheme. Therefore, broadly construing the allegations of Plaintiffs' Amended Complaint which pertain to Defendant Hanman, the only specific predicate acts Plaintiffs alleged as to Hanman are 1) controlling or directing the actions of DFA, and 2) various alleged violations of the Travel Act.

As the Court explained above, Plaintiffs alleged sufficient facts to make out plausible mail

fraud predicate acts with respect to DFA. Although Plaintiffs alleged that Hanman was DFA's CEO from 1998-2005, each of DFA's alleged mail fraud predicate acts occurred after that period of time. Likewise, DFA's alleged violations of the wire fraud statute occurred after Hanman's tenure as CEO. Therefore, even if the Court were to find that Hanman's alleged control of DFA could give rise to plausible charges of mail fraud or wire fraud – despite Plaintiffs' failure to plead any *specific* actions whatsoever by Hanman exercising such control – the alleged predicate acts occurred after the period of time he controlled the company.

> Plaintiffs also alleged that Hanman violated the Travel Act, which provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person or persons to travel in, or to be transported in interstate or foreign commerce in the execution or concealment of a scheme or artifice to defraud that person or those persons of money or property having a value of $5,000 or more . . . [s]hall be fined . . . or imprisoned not more than ten years, or both.

18 U.S.C. § 2314. To make out a plausible allegation of travel fraud, Plaintiffs must have alleged "(1) that the defendant devised a scheme intending to defraud a victim of money or property of a minimum value of $5,000, and (2) that as a result of this scheme, a victim was induced to travel in interstate commerce." *United States v. Freeman*, 434 F.3d 369, 376-77 (5th Cir. 2005) (punctuation omitted). Plaintiffs did not allege that Hanman induced them to travel in interstate commerce in furtherance of Defendants' alleged scheme. Rather, Plaintiffs apparently alleged that Hanman traveled and caused other Defendants to travel in interstate commerce in furtherance of their scheme. Those facts are not sufficient to make out a violation of the Travel Act.

> Therefore, Plaintiffs failed to allege any specific predicate acts by Defendant Gary Hanman. Accordingly, the Court grants Defendants' Motion to Dismiss [38] Count Eight of the Amended

Complaint as it pertains to him.

      **b.**     **SMA**

      Plaintiffs made few factual allegations specifically pertaining to Defendant Southern Marketing Agency, Inc. ("SMA"). First, in the section of the Amended Complaint outlining the RICO predicate acts of all Defendants, Plaintiffs alleged that SMA violated the Travel Act. Specifically, Plaintiffs alleged that an SMA executive attended meetings in Tennessee at DFA's Southeast Council headquarters with the intent of furthering Defendants' racketeering enterprise. However, as the Court previously noted, to make out a plausible allegation of travel fraud, Plaintiffs must allege "(1) that the defendant devised a scheme intending to defraud a victim of money or property of a minimum value of $5,000, and (2) that as a result of this scheme, a victim was induced to travel in interstate commerce." *Id.* Plaintiffs did not allege that SMA induced them to travel in interstate commerce in furtherance of Defendants' alleged scheme. Therefore, they have not alleged sufficient facts to show that SMA violated the Travel Act.

      Next, in the factual allegations pertaining to Count Eight Plaintiffs alleged that SMA controlled the actions of the purported racketeering enterprise by using its role as a marketing agent to handle the payments from dairy processors to dairy farmers. However, Plaintiffs failed to allege any specific actions that constituted "control" of the enterprise. Furthermore, Plaintiffs failed to allege any federal statutes which SMA's alleged actions violated. Accordingly, the factual allegations in Count Eight pertaining to SMA are insufficient to establish that SMA committed any RICO predicate acts.

      For the reasons stated above, the Court finds that Plaintiffs failed to establish any specific predicate acts by Defendant Southern Marketing Agency, Inc. ("SMA"). Accordingly, the Court

14

grants Defendants' Motion to Dismiss [38] Count Eight of the Amended Complaint as it pertains to SMA.

c.      DMS

Plaintiffs made few factual allegations specifically pertaining to Defendant Dairy Marketing Services, LLC ("DMS"). First, in the section of the Amended Complaint outlining the RICO predicate acts of all Defendants, Plaintiffs alleged that DMS violated the Travel Act. Specifically, Plaintiffs alleged that DMS management met with DFA management at DFA's Southeast headquarters in Knoxville, Tennessee. However, as the Court previously noted, to make out a plausible allegation of travel fraud, Plaintiffs must allege "(1) that the defendant devised a scheme intending to defraud a victim of money or property of a minimum value of $5,000, and (2) that as a result of this scheme, a victim was induced to travel in interstate commerce." *Id.* Plaintiffs did not allege that DMS induced them to travel in interstate commerce in furtherance of Defendants' alleged scheme. Therefore, they have not alleged sufficient facts to show that DMS violated the Travel Act.

Next, in the factual allegations pertaining to Count Eight of the Amended Complaint, Plaintiffs alleged that DMS held a position of control within Defendants' RICO enterprise. Specifically, Plaintiffs alleged that DMS used its role as a marketing agent to handle the payments from dairy processors to dairy farmers. However, Plaintiffs failed to allege any specific actions that constituted "control" of the alleged enterprise. Furthermore, Plaintiffs failed to allege any federal statutes which DMS's actions violated. Accordingly, the factual allegations of Count Eight are insufficient to establish that DMS committed any RICO predicate acts.

For the reasons stated above, the Court finds that Plaintiffs failed to establish any specific predicate acts by Defendant Dairy Marketing Services, LLC ("DMS"). Accordingly, the Court

grants Defendants' Motion to Dismiss [38] Count Eight of the Amended Complaint as it pertains to DMS.

In summary, the Court denies Defendants' Motion to Dismiss [38] Count Eight of the Amended Complaint as it pertains to Defendant DFA, but the Court grants Defendants' Motion to Dismiss [38] Count Eight of the Amended Complaint as it pertains to Defendants Hanman, SMA, and DMS.

4.    *Count Nine: Violation of 18 U.S.C. § 1962(d)*

In Count Nine of the Amended Complaint, Plaintiffs alleged that all Defendants violated 18 U.S.C. § 1962(d), which provides: "It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section." 18 U.S.C. § 1962(d). To allege a RICO conspiracy under § 1962(d), Plaintiffs must allege "(1) that two or more people agreed to commit a substantive RICO offense and (2) that [the defendant] knew of and agreed to the overall objective of the RICO offense." *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010). "A conspirator must at least know of the conspiracy and adopt the goal of furthering or facilitating the criminal endeavor." *Id.* (punctuation omitted).

In *criminal* RICO cases, the Fifth Circuit does not require the government to prove that the alleged conspirator "committed or agreed to commit the two predicate acts." *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005). Rather, the government must only prove that the alleged conspirator knew of and agreed to "the overall objective of the RICO offense." *Id.* In contrast, the Fifth Circuit has held in civil RICO cases that "the core of a RICO civil conspiracy is an agreement to commit predicate acts," and, therefore, "a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Abraham v. Singh*, 480 F.3d 351, 357 (5th

16

Cir. 2007). Accordingly, a RICO conspirator "need not expressly agree to violate the [RICO] statute, but he must have known and agreed to assist in the underlying [predicate] criminal offense." *Marlin v. Moody Nat'l Bank*, 248 F. App'x 534, 538 (5th Cir. 2007) (citing *United States v. Marmolejo*, 89 F.3d 1185, 1196 (5th Cir. 1996)).

Defendants argue that Count Nine of the Amended Complaint should be dismissed because Plaintiffs failed to allege sufficient facts to support any viable substantive RICO claim. As explained above, Plaintiffs alleged sufficient facts to show that Defendant DFA committed predicate acts in furtherance of the alleged scheme. As the Court shall explain below, Plaintiffs also alleged sufficient facts to show that Defendant Dean committed predicate acts in furtherance of the alleged overall scheme. However, Plaintiffs did not allege sufficient facts to show that Defendants Hanman, SMA, and DMS committed any predicate acts or agreed to assist in any predicate acts. Therefore, the Court rejects Defendants' argument that the RICO conspiracy claim should be dismissed because Plaintiffs failed to allege any substantive RICO claims. Plaintiffs alleged sufficient facts to make out plausible substantive RICO claims as to Defendants DFA and Dean, and to show that Defendants DFA and Dean committed predicate acts in furtherance of an agreed objective of monopolizing the market for raw milk for purposes of extracting greater profits from dairy farmers.

Defendants also argue that Count Nine of the Amended Complaint should be dismissed because its factual allegations are conclusory. This argument has no merit. First, Plaintiffs incorporated all of their previous allegations concerning Defendants' alleged pattern of racketeering activity. Second, Plaintiffs included approximately three pages of specific factual allegations in support of their conspiracy claim.

Finally, Defendants argue that Count Nine of the Amended Complaint should be dismissed

17

because it describes an antitrust conspiracy, rather than a RICO conspiracy. The Court rejects this argument for the same reasons stated in its standing analysis. Defendants have cited no law holding that the same actions can not give rise to both antitrust liability and RICO liability.

Accordingly, the Court denies Defendants' Motion to Dismiss [38] Count Nine of the Amended Complaint as it pertains to Defendant DFA, but the Court grants the motion as it pertains to Defendants Hanman, SMA, and DMS.

**C.      Two Predicate Acts Attributable to Each Defendant**

Defendants argue that Counts Six through Eight should be dismissed because Plaintiffs failed to allege two predicate acts of racketeering attributable to any Defendant. As discussed above, Plaintiffs plead sufficient facts to show predicate acts attributable to Defendant DFA, but Plaintiffs did not plead sufficient facts to show predicate acts attributable to Defendants Hanman, SMA, or DMS. Accordingly, the Court denied Defendants' Motion to Dismiss [38] as it pertains to Defendant DFA, but granted Defendants' Motion to Dismiss as it pertains to Defendants Hanman, SMA, and DMS.

**D.      Incorporation of Previous Factual Allegations**

Defendants argue that Counts Seven through Nine must be dismissed because Plaintiffs failed to reallege or incorporate by reference the factual allegations concerning Defendants' predicate acts. Federal Rule of Civil Procedure 10(c) provides: "A statement in a pleading may be adopted by reference elsewhere in the same pleading . . . ." FED. R. CIV. P. 10(c). "[S]uch incorporation must be done with a degree of specificity and clarity which would enable the responding party to easily determine the nature and extent of the incorporation." *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1176 (5th Cir. 2006). Regardless, "[p]leadings must be construed as

18

to do justice." FED. R. CIV. P. 8(e).

Paragraphs 236 through 242 of Plaintiffs' Amended Complaint contain Plaintiffs' factual allegations concerning predicate acts. That subsection is preceded by the heading "**Predicate Acts of Racketeering Relating to all RICO Claims**." Therefore, as Plaintiffs specifically stated in the Amended Complaint that the factual allegations pertaining to predicate acts applied to *all* of their RICO claims, Defendants should have been able to easily determine that was the case. Indeed, Defendants' briefing indicates that they fully understood Plaintiffs' intent. Accordingly, Plaintiffs' complied with Rule 10(c). *See Carroll*, 470 F.3d at 1176 (where pleading history was sufficiently simple and there was no indication that the parties or court were confused about the nature and extent of incorporation, a blanket incorporation clause was sufficient to provide opposing party with ample notice of claims).

### E.      Fraud

In Count Ten of the Amended Complaint, Plaintiffs alleged a claim of common law fraud as to all Defendants. Defendants argue that Plaintiffs' fraud claim is barred by the applicable statute of limitations. Under Mississippi law, fraud claims are subject to a three-year statute of limitations. *CitiFinancial Mortg. Co. v. Washington*, 967 So. 2d 16, 19 (Miss. 2007); *Stephens v. Equitable Life Assur. Soc'y of the United States*, 850 So. 2d 78, 82 (Miss. 2003). The parties apparently agree that Defendants' alleged tortious actions occurred more than three years before the filing of this action. However, Plaintiffs argue that Defendants fraudulently concealed their actions, preventing Plaintiffs from filing earlier.

Mississippi Code provides: "If a person liable to any personal action shall fraudulently conceal the cause of action from the knowledge of the person entitled thereto, the cause of action

shall be deemed to have first accrued at, and not before, the time at which such fraud shall be, or with reasonable diligence might have been, first known or discovered." MISS. CODE ANN. § 15-1-67; *see also Carder v. BASF Corp.*, 919 So. 2d 258, 261 (Miss. Ct. App. 2005) (fraudulent concealment tolls the statute of limitations). When information concerning a defendant's alleged fraudulent activity "is placed in the public domain, the doctrine of fraudulent concealment ceases to be applicable." *Carder*, 919 So. 2d at 262 (where plaintiff alleged price fixing in violation of Mississippi's antitrust statutes, newspaper article outlining defendant's actions placed information regarding the alleged fraud in the public domain and tolled the statute of limitations); *see also Spann v. Diaz*, 987 So. 2d 443, 449 (Miss. 2008) (where facts supporting a plaintiff's cause of action were a matter of public record, plaintiff had all the information necessary to pursue her claim, barring the application of fraudulent concealment doctrine); *McWilliams v. McWilliams*, 970 So. 2d 200, 203 (Miss. Ct. App. 2007) (". . . the doctrine of concealed fraud will not toll the statute of limitations where the instrument is recorded as a matter of public record.").

Defendants argue that their alleged conduct was made known to the public at least as early as July 5, 2007 – the date on which the complaint was filed in a similar case in the United States District Court for the Eastern District of Tennessee. Indeed, Plaintiffs alleged in the Amended Complaint that "other antitrust complaints" were filed against Defendants "beginning in 2007." The parties failed to provide the Court with a copy of any court documents from the previous cases addressing Defendants' actions, or even a cursory background of the matter. However, a variety of actions were filed in Tennessee in 2007 by different groups of plaintiffs, accusing Defendants of the same antitrust violations alleged in the present matter. *See e.g.* Complaint, *Sweetwater Valley Farm, Inc. v. Dean Foods Co.*, No. 1:07-CV-51 (M.D. Tenn. July 5, 2007), ECF No. 1; Complaint, *Food*

*Lion v. Dean Foods Co.*, No. 2:07-CV-188 (E.D. Tenn. August 9, 2007), ECF No. 1; Complaint,

*Sweetwater Valley Farm, Inc. v. Dean Foods Co.*, No. 2:07-CV-208 (E.D. Tenn. August 27, 2007),

ECF No. 1; Complaint, *Aker v. Dean Foods Co.*, No. 2:07-CV-248 (E.D. Tenn. Oct. 3, 2007). The

cases were eventually consolidated in a single multi-district case. *See* Transfer Order, *In re*

*Southeastern Milk Litigation*, No. 2:08-MD-1000 (E.D. Tenn. Jan. 10, 2008), ECF No. 1.

Therefore, the factual allegations of Plaintiffs' Complaint and Amended Complaint were a

matter of public record as early as July 5, 2007, and Plaintiffs' fraud claim accrued no later than that

date, the first date on which they could with reasonable diligence have discovered the facts

underlying the claim. *Spann*, 987 So. 2d at 449; *Carder*, 919 So. 2d at 262. They filed their

Complaint on April 26, 2011 – over three years after the fraud claim accrued. Accordingly, their

fraud claim is barred by the applicable statute of limitations, and the Court grants Defendants'

Motion to Dismiss [38] Count Ten of the Amended Complaint.

### F.   *Tortious Interference with Contract*

In Count Twelve of the Amended Complaint, Plaintiffs alleged that Defendants Dean,

Engles, and Hanman tortiously interfered with their contract with Defendant DFA. Hanman argues

that the claim is time-barred for the same reasons as the Court discussed above. In response,

Plaintiffs argued that the statute of limitations should be tolled due to Hanman's alleged fraudulent

concealment of his actions.

Claims for tortious interference with contract are governed by a three-year statute of

limitations. *Nichols v. Tri-State Brick & Tile Co.*, 608 So. 2d 324, 332-33 (Miss. 1992). As discussed

above, the factual allegations of Plaintiffs' Complaint and Amended Complaint were a matter of

public record as early as July 5, 2007. Therefore, Plaintiffs' claim of tortious interference with

contract accrued no later than July 5, 2007 – the first date on which they could, through exercise of reasonable diligence, have discovered the facts underlying the claim. *Spann*, 987 So. 2d at 449; *Carder*, 919 So. 2d at 262. They filed their Complaint on April 26, 2011 – over three years after the tortious interference claim accrued. Accordingly, it is barred by the applicable statute of limitations, and the Court grants Defendants' Motion to Dismiss [38] Count Twelve of the Amended Complaint.

### III. DEAN'S MOTION TO DISMISS [44]

Defendant Dean Foods Company filed a Motion to Dismiss [44] Counts Six through Ten and Count Twelve of the Amended Complaint.

**A.      *Standing***

Dean first argues that Plaintiffs lack standing to pursue the RICO claims of Counts Six through Nine of the Amended Complaint. The Court rejects that argument for the same reasons stated above.

**B.      *Pattern of Racketeering Activity***

In Count Eight of the Amended Complaint, Plaintiffs alleged that Dean violated 18 U.S.C. § 1962(c), which provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). Dean argues that Plaintiffs failed to allege sufficient facts to show that it engaged in a pattern of racketeering activity, and, therefore, that Count Eight should be dismissed. "A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain*, 556 F.3d at 263.

22

Plaintiffs alleged that Dean violated the federal wire fraud statute, which provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343. "[W]ire fraud requires proof (1) of a scheme to defraud; (2) that the scheme employed false or fraudulent material representation; and (3) that the scheme utilized an interstate wire communication." *United States v. Curtis*, 635 F.3d 704, 718 n. 49 (5th Cir. 2011). "A 'material' statement has a natural tendency to influence, or is capable of influencing, the decision-making body to which it was addressed." *United States v. Valencia*, 600 F.3d 389, 426 (5th Cir. 2010). "The wire need not be an essential element of the scheme; rather, it is sufficient for the wire to be incident to an essential part of the scheme or a step in the plot." *United States v. Barraza*, 655 F.3d 375, 2011 U.S. App. LEXIS 18630, at *14 (5th Cir. 2011) (punctuation omitted).

Plaintiffs alleged two acts of wire fraud by Dean. First, Plaintiffs alleged that a Dean executive, Marty Devine, had a telephone conversation with the Dean milk procurement team on December 17, 2002, for the purpose of outlining the Defendants' alleged conspiracy. Specifically, Plaintiffs alleged that Devine represented to the other Dean employees that Defendant Engles "stated that he would live up to his word; and based upon this, we are going to have to make some changes. Effective January 2003, we will be changing our relationship with the field. We will be outsourcing the field operations to Dairy Marketing Services." Second, Plaintiffs alleged that a Dean spokesperson, Liliana Esposito, sent an e-mail to a website titled "Dairy Herd Network" in which she claimed that dairy industry competition was "alive and flourishing" and stated that "farmers have many outlets for their raw milk at competitive prices."

23

Dean initially argued that Plaintiffs' allegations were insufficient to make out a wire fraud charge because Plaintiffs did not allege that they were misled by the wire communications. However, using wire communications "to execute or attempt to execute a scheme to defraud is indictable as [wire] fraud, and hence a predicate act of racketeering under RICO, even if no one relied on any misrepresentation." *Bridge*, 553 U.S. at 649, 128 S. Ct. 2131. Therefore, Plaintiffs were not required to allege that they were misled by the wire communications.

Dean also argues that Plaintiffs failed to allege that any of Dean's assertions in the above communications were false or fraudulent. Plaintiffs alleged in the introductory paragraph before the list of purported wire fraud violations that each of the wire communications listed therein were "false and fraudulent pretenses, representations and promises." Therefore, Plaintiffs plainly alleged that the factual representations made in each wire communication listed below that heading were false.[7]

Finally, Dean argues that Plaintiffs failed to allege that the communications were in furtherance of a scheme to defraud. Considering the statements in light of the rest of Plaintiffs' factual allegations, they are plainly "in furtherance" of Defendants' alleged scheme as it is described by Plaintiffs. The first communication concerns Dean's outsourcing of operations to Defendant DMS, a dairy marketing agency allegedly controlled by Defendant DFA – the sort of noncompetitive behavior of which Plaintiffs' complain. The second communication contains a public representation

---

[7]Plaintiffs' allegation that the communication pertaining to Dean's outsourcing of marketing services to DMS is false appears to be contrary to the substantive thrust of Plaintiffs' claims. Indeed, Dean's outsourcing of marketing services to an entity controlled by DFA is exactly the sort of non-competitive behavior of which Plaintiffs complain. Nonetheless, Plaintiff alleged that it was false, and the Court is not permitted to assess the veracity of Plaintiffs' allegations at this stage of the proceedings.

that the market for dairy farmers' milk is "alive and flourishing,"and that they receive "competitive prices." Plaintiffs obviously alleged that is false. Within the full context of Plaintiffs' Amended Complaint – which alleges Dean conspired to lower the profits of dairy farmers' businesses in order to benefit the bottling and processing side of the industry – the above representations are related and part of a continuous scheme to allegedly defraud Plaintiffs.

Therefore, the allegations listed above are sufficient to make out a plausible "pattern of racketeering activity." Accordingly, the Court rejects Dean's argument that Count Eight of the Amended Complaint should be dismissed.

## C.    *RICO Conspiracy*

Dean argues that Plaintiffs' RICO conspiracy claim should be dismissed, echoing the arguments made by Defendant DFA. As the Court explained above, Plaintiffs alleged sufficient facts to make out a plausible RICO conspiracy claim as to Defendants DFA and Dean. Accordingly, the Court denies Dean's Motion to Dismiss [44] Plaintiffs' RICO conspiracy claim for the same reasons stated above.

## D.    *Fraud*

For the same reasons stated above, the Court finds that Plaintiffs' fraud claim as to Defendant Dean Foods Company is time-barred. Accordingly, the Court grants Dean's Motion to Dismiss [44] Count Ten of the Amended Complaint.

## E.    *Tortious Interference with Contract*

For the same reasons stated above, the Court finds that Plaintiffs' tortious interference with contract claim as to Defendant Dean Foods Company is time-barred. Accordingly, the Court grants Dean's Motion to Dismiss [44] Count Twelve of the Amended Complaint.

## IV. ENGLES' MOTION TO DISMISS [46]

Defendant Greg Engles filed a Motion to Dismiss [46] all of Plaintiffs' claims against him, primarily arguing that the Court lacked personal jurisdiction over him. Ordinarily, the Court addresses jurisdictional issues prior to any other challenges. *See Patin v. Thoroughbred Power Boats*, 294 F.3d 640, 646 n. 11 (5th Cir. 2002). In the present case, however, Plaintiffs' sole basis for personal jurisdiction over Defendant Engles is RICO's venue and process statute, which provides for nationwide service of process. *See* 18 U.S.C. § 1965(a), (b). As the Court shall explain, Plaintiffs' RICO claims as to Defendant Engles should be dismissed for their failure to state a claim. That being the case, Plaintiffs have not established a basis for the Court to exercise personal jurisdiction over Defendant Engles with respect to any other claims.

Plaintiffs asserted two RICO claims as to Defendant Engles – Count Eight of the Amended Complaint, regarding his alleged violation of 18 U.S.C. § 1962(c); and Count Nine of the Amended Complaint, regarding a RICO conspiracy in violation of 18 U.S.C. § 1962(d). Section 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c). Engles argues, among other things, that Plaintiffs failed to allege that he committed any predicate acts of racketeering or engaged in a pattern or racketeering. As the Court already explained, "[a] pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain*, 556 F.3d at 263.

Plaintiffs mentioned Engles in the section of the Amended Complaint concerning alleged

violations of the wire fraud statute. They alleged that employees of Defendant Dean engaged in a telephone conversation where one of them made factual representations regarding certain actions or statements of Defendant Engles. This factual allegation is insufficient to show that Engles violated the wire fraud statute, as Plaintiffs did not allege that Engles used the telephone. *Curtis*, 635 F.3d at 718 n. 49 (defendant must have "utilized an interstate wire communication").

Next, Plaintiffs alleged that Engles violated the Travel Act. Specifically, Plaintiffs alleged that Engles engaged in interstate travel on October 30-31, 2002, for the purpose of meeting with Defendant Hanman and others to discuss their purported scheme. Plaintiffs also alleged that Engles engaged in interstate travel for the purposes of attending a hunting trip hosted by Defendant Hanman during which they devised their scheme. To make out a plausible allegation of travel fraud, Plaintiffs must have alleged "(1) that the defendant devised a scheme intending to defraud a victim of money or property of a minimum value of $5,000, and (2) that as a result of this scheme, a victim was induced to travel in interstate commerce." *Freeman*, 434 F.3d at 376-77 (punctuation omitted). Plaintiffs did not allege that Engles induced them to travel in interstate commerce. Consequently, they did not allege sufficient facts to make out a violation of the Travel Act.

Accordingly, Plaintiffs did not allege any specific RICO predicate acts committed by Defendant Greg Engles. Therefore, Plaintiffs failed to allege sufficient facts to show that he committed any substantive RICO violation. *See* 18 U.S.C. § 1962(c) (requiring a "pattern of racketeering activity"). Plaintiffs failed to allege sufficient facts to show that Engles agreed to committed a substantive RICO violation, that he committed any RICO predicate acts, or that he agreed to commit any RICO predicate acts, they failed to allege sufficient facts to show that he conspired to violate RICO. Therefore, Counts Eight and Nine of Plaintiffs' Amended Complaint are

dismissed with prejudice as they pertain to Defendant Engles.

Plaintiffs asserted RICO's venue and process provision as the sole basis for this Court's exercise of personal jurisdiction over Defendant Engles. As the Court has dismissed Plaintiffs' RICO claims as to Engles, there is no longer any basis for the Court's exercise of personal jurisdiction over him. Accordingly, Plaintiffs' remaining claims as to Engles are dismissed without prejudice.

### V. CONCLUSION

For the reasons stated above, the Court **grants in part and denies in part** the Motion to Dismiss [38] filed by Defendants Dairy Farmers of America, Inc., Dairy Marketing Services, LLC, Southern Marketing Agency, Inc., and Gary Hanman. Specifically, the Court grants the motion with respect to:

- Count Eight of the Amended Complaint, as it pertains to Defendants Gary Hanman, Southern Marketing Agency, Inc., and Dairy Marketing Services, LLC;

- Count Nine of the Amended Complaint, as it pertains to Defendants Gary Hanman, Southern Marketing Agency, Inc., and Dairy Marketing Services, LLC;

- Count Ten of the Amended Complaint; and

- Count Twelve of the Amended Complaint.

Accordingly, those claims are dismissed with prejudice. The Court denies the motion in all other respects.

Next, the Court **grants in part and denies in part** the Motion to Dismiss [44] filed by Defendant Dean Foods Company. Specifically, the Court grants the motion as it pertains to Counts Ten and Twelve of the Amended Complaint; those claims are dismissed with prejudice. The Court

denies the motion in all other respects.

Finally, the Court **grants** the Motion to Dismiss [46] filed by Defendant Greg Engles. Plaintiffs' RICO claims as to Engles are dismissed with prejudice, and all other claims asserted by Plaintiffs as to Engles are dismissed without prejudice.

SO ORDERED AND ADJUDGED this 9th day of November, 2011.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE